IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MARTIN P. SHEEHAN,

      Appellant/Trustee,

v.                         CIVIL ACTION NO. 1:16CV109
                                 (Judge Keeley)

KEITH DOYLE ASH and
PHYLLIS JEAN ASH,

      Appellees/Debtors.

## MEMORANDUM OPINION AND ORDER
## AFFIRMING ORDER OF THE BANKRUPTCY COURT

Trustee Martin P. Sheehan ("Trustee") appeals an order entered by the Honorable Patrick M. Flatley, United States Bankruptcy Judge ("Bankruptcy Court"), overruling his objection to certain exemptions claimed by Keith Doyle Ash and Phyllis Jean Ash ("Debtors") in their voluntary petition for bankruptcy pursuant to Chapter Seven of the Bankruptcy Code. The question presented is whether Louisiana's exemptions, which the Bankruptcy Code directs the Debtors to apply, encompass personal property situated outside Louisiana at the time of filing. For the reasons that follow, the Court concludes that the Debtors may apply Louisiana's exemptions to their personal property in West Virginia, and thus **AFFIRMS** the Bankruptcy Court's Order.

### I. BACKGROUND

**A.   Factual Background**

The parties stipulated to the relevant facts before the Bankruptcy Court. The Debtors lived in Louisiana from 2011 until

## MEMORANDUM OPINION AND ORDER
## AFFIRMING ORDER OF THE BANKRUPTCY COURT

March 2015, at which time they relocated to West Virginia. On July 24, 2015, the Debtors filed a voluntary petition for bankruptcy in the Northern District of West Virginia under Chapter 7 of the Bankruptcy Code (Dkt. No. 8-8 at 1). At the time of filing, the Debtors owned real and personal property still situated in Louisiana. The Debtors also owned personal property situated in West Virginia, including a checking account, appliances, televisions, clothing, a wedding band, two guns, a 2002 Geo Tracker, and a possible payment of workers' compensation.[1] Id. at 1-2. It is this personal property that is at issue in this appeal.

---

[1] In addition to his original argument regarding extraterritorial application of state law, which was addressed by the Bankruptcy Court and is discussed below, the Trustee now seeks to preclude the Debtors' claimed exemption for the possible payment of West Virginia workers' compensation based on his contention that the language of the Louisiana exemption covers only Louisiana workers' compensation (Dkt. No. 19-1 at 10). Because the Trustee failed to raise this objection below, the Court will not consider it on appeal. See Muth v. United States, 1 F.3d 246 (4th Cir. 1993) ("[I]ssues raised for the first time on appeal generally will not be considered."); see also Taylor v. Freeland & Kronz, 503 U.S. 638, 643-44 (1992) (reasoning that objections may not be raised after the time provided by Rule 4003(b)). As the Debtors note, had this argument been raised, it would have prompted the Bankruptcy Court to address conflicting decisions concerning whether an individual federal exemption may apply in the absence of a correlating state exemption (Dkt. No. 23 at 14, 22-23).

MEMORANDUM OPINION AND ORDER
AFFIRMING ORDER OF THE BANKRUPTCY COURT

**B.  Bankruptcy Exemptions**

When an individual debtor files for bankruptcy, "all legal or equitable interest[s] of the debtor in property" become part of a bankruptcy estate. 11 U.S.C. § 541(a). "To help the debtor obtain a fresh start, however, the Bankruptcy Code allows debtors to exempt from the estate limited interests in certain kinds of property." Clark v. Rameker, 134 S.Ct. 2242, 2244 (2014) (quotation omitted) (quoting Rousey v. Jacoway, 544 U.S. 320, 325 (2005)). According to the House Judiciary Committee, "'[t]he historical purpose' of bankruptcy exemptions has been to provide a debtor 'with the basic necessities of life' so that she 'will not be left destitute and a public charge.'" Id. at 2247 n.3 (quoting H.R. Rep. No. 95-595, at 126 (1977)). Indeed, "statutes creating debtors' exemptions must be construed liberally in favor of the debtor and the exemption." In re Nguyen, 211 F.3d 105, 110 (4th Cir. 2000).

"Congress designed the exemption system . . . to allow states to participate in th[e] regulation of debtor/creditor relations." Hovis v. Wright, 751 F.2d 714, 715-16 (4th Cir. 1985). As the Fourth Circuit has explained,

> [t]he Bankruptcy Code provides two alternative exemption
> schemes. Unless state law provides otherwise, a debtor
> may choose to exempt from the estate either property
> listed in the federal bankruptcy exemptions set forth in
> § 522(d) of the Bankruptcy Code or property exempt under

3

> applicable state or local law, together with property
> exempt under federal, non-bankruptcy law. 11 U.S.C.
> § 522(b)(1). However, § 522(b)(2) of the Bankruptcy Code
> authorizes the states to opt out of the federal
> bankruptcy exemption scheme and thereby deny debtors the
> right to elect the federal bankruptcy exemptions
> contained in § 522(d). By opting out, a state restricts
> its debtors to any exemptions available under state or
> local law and federal, non-bankruptcy law.

Sheehan v. Peveich, 574 F.3d 248, 251 (4th Cir. 2009). In essence,

Congress expressly delegated to the states "the power to create

state exemptions in lieu of the federal bankruptcy exemption

scheme." Id. at 252. These two alternatives are described generally

as the "federal exemptions" and the "state exemptions."

The Bankruptcy Code directs debtors to identify their

applicable state law as follows:

> State or local law that is applicable on the date of the
> filing of the petition to the place in which the debtor's
> domicile has been located for the 730 days immediately
> preceding the date of the filing of the petition or if
> the debtor's domicile has not been located in a single
> State for such 730-day period, the place in which the
> debtor's domicile was located for 180 days immediately
> preceding the 730-day period or for a longer portion of
> such 180-day period than in any other place.

11 U.S.C. § 522(b)(3)(A). Prior to The Bankruptcy Abuse Prevention

and Consumer Protection Act of 2005 ("BAPCPA"), the statute had

instead directed debtors "to apply the exemption laws from the

state that was their domicile for the 180 days immediately

preceding the date of the filing of the petition or the state where

4

**MEMORANDUM OPINION AND ORDER**
**AFFIRMING ORDER OF THE BANKRUPTCY COURT**

they were domiciled for the greater portion of that 180-day period." <u>In re Stephens</u>, 402 B.R. 1, 3 (B.A.P. 10th Cir. 2009). The more lengthy 730-day "look-back" window reflects a congressional effort to curb debtors from forum shopping for a state with more favorable exemptions. <u>See</u> <u>In re Willis</u>, 495 B.R. 856, 859-60 (Bankr. W.D. Wis. 2013); H.R. Rep. No. 109-31, pt. 1, at 15-16 (2005), <u>as reprinted in</u> 2005 U.S.C.C.A.N. 88, 102 (discussing how the window prevents debtors from moving to states with generous exemptions for home equity).

BAPCPA also added what is known as the "hanging paragraph." At the end of § 522(b)(3), an unnumbered provision states that, "[i]f the effect of the domiciliary requirement under subparagraph (A)," quoted above, "is to render the debtor ineligible for any exemption, the debtor may elect to exempt property that is specified under subsection (d)," which lists the federal bankruptcy exemptions. This provision ensures that a debtor may apply the federal exemptions if his applicable state under § 522(3)(A) is an opt-out state, but the limitations of its exemption law nonetheless prevent the debtor from taking "any exemption."[2]

_____

[2] There is some debate over whether the hanging paragraph is triggered only in the extreme circumstance that a debtor may not use even a single exemption under applicable state law, or whether debtors may claim individual federal exemptions for particular

## MEMORANDUM OPINION AND ORDER
## AFFIRMING ORDER OF THE BANKRUPTCY COURT

The parties agree that, because the Debtors relocated to West Virginia less than 730 days prior to filing, their prior domicile, Louisiana, provides the applicable law (Dkt. No. 8-8 at 1). Louisiana is an "opt-out" state that does not permit an "individual debtor" to take advantage of the federal exemptions. See La. Stat. Ann. § 13:3881(B)(1) ("In cases instituted under the provisions of Title 11 of the United States Code, entitled 'Bankruptcy', there shall be exempt from the property of the estate of an individual debtor only that property and income which is exempt under the laws of the state of Louisiana and under federal laws other than Subsection (d) of Section 522 of Title 11 of the United States Code.").[3] Therefore, the Debtors are confined to the Louisiana exemptions.

---

property that is not exempt under applicable state law. Compare In re Wilson, No. 14-20557-TLM, 2015 WL 18550919 (Bankr. D. Idaho Jan. 13, 2015), with In re Kelsey, 477 B.R. 870 (Bankr. M.D. Fla. 2012). The Bankruptcy Court in this District has previously suggested that it would subscribe to the more liberal construction. See In re Capelli, 518 B.R. 873, 880 (Bankr. N.D.W. Va. 2014).

[3] Because the Louisiana opt-out statute is not limited to its residents, the Court need not address whether non-residents such as the Debtors are eligible to select the federal exemptions. See Shell v. Yoon, 499 B.R. 610, 614 (N.D. Ind. 2013); In re George, 440 B.R. 164 (Bankr. E.D. Wisc. 2010) (permitting a debtor to take the federal exemptions where, although Illinois exemption law applied, the debtor "no longer reside[d] in Illinois, and the Illinois 'opt-out' [wa]s specifically limited to residents").

**MEMORANDUM OPINION AND ORDER**
**AFFIRMING ORDER OF THE BANKRUPTCY COURT**

## C.  Procedural Background

On July 24, 2015, the Debtors filed a voluntary petition for bankruptcy pursuant to Chapter 7 of the Bankruptcy Code (Dkt. No. 8-3 at 1). At that time, they held assets with a total value of $85,771. The Debtors' real property, a house on approximately two acres in Coushatta, Louisiana, accounted for $65,000. The remaining $20,771 in assets comprised personal property located in both Louisiana and West Virginia. Id. at 8. As discussed, the Bankruptcy Code instructed the Debtors to claim exemptions pursuant to Louisiana law, and they did so on Schedule C of their petition. Id. at 15.

The Trustee objected to the Debtors' claims of exemptions for personal property located outside Louisiana at the time of filing (Dkt. No. 8-4). He argued "that the State of Louisiana lacks the power as a sovereign entity to prescribe exemptions for property which was not within the State of Louisiana on the date of filing and further that the use of such exemptions is prohibited by the Due Process clause of the Fourteenth Amendment." Id. at 2. The Trustee relied on the "presumption against extraterritoriality" of federal law, as well as traditional principles of state sovereignty, to argue that laws promulgated by states cannot apply

7

### MEMORANDUM OPINION AND ORDER
### AFFIRMING ORDER OF THE BANKRUPTCY COURT

to property outside their borders. Id. (citing Kiobel v. Royal Dutch Petroleum Co., 133 S.Ct. 1659 (2013)).

In its Order, the Bankruptcy Court overruled the Trustee's objection. It reasoned that, because Congress incorporated state exemptions into the Bankruptcy Code, federal law – not state law – creates the possibility that a state's exemption laws will be applied outside a state's borders (Dkt. No. 8-9 at 4-5). To determine whether Louisiana's exemptions should be applied to property in other states, it adopted the majority approach, which liberally construes state exemptions to apply extraterritorially absent state-specific restrictions to the contrary. Id. at 5. Moreover, it declined to apply a "presumption against extraterritoriality" to states, noting that the Supreme Court has applied the rule only to international concerns. Id. at 5-6. The Trustee appealed from this judgment.

## II. JURISDICTION

District courts have jurisdiction to hear appeals "from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings" under the Bankruptcy Code. 28 U.S.C. § 158(a). Such proceedings include "core proceedings," which encompass "allowance or disallowance of . . . exemptions from property of the estate." Id. § 157(b)(2)(B). Indeed, the "[g]rant

8

or denial of a claimed exemption is a final appealable order from a bankruptcy proceeding." <u>Sumy v. Schlossberg</u>, 777 F.2d 921, 923 (4th Cir. 1985).

### III. STANDARD OF REVIEW

A district court sitting in its capacity as a bankruptcy appellate court reviews "findings of fact only for clear error, but consider[s] the relevant legal questions <u>de novo</u>." <u>In re Varat Enters., Inc.</u>, 81 F.3d 1310, 1314 (4th Cir. 1996). When the parties do not dispute the relevant facts, the Court's review is <u>de novo</u>. <u>See</u> <u>In re Jones</u>, 591 F.3d 308, 310 (4th Cir. 2010).

### IV. DISCUSSION

The Trustee argues that the well-established "presumption against extraterritoriality" and traditional limits on state power preclude application of a state's exemptions to property outside that state at the time of filing (Dkt. No. 19 at 13). The Trustee frames the issue broadly, focusing on the limited authority of the states as sovereigns to enact laws that apply outside their borders. Although this consideration is relevant, it is also undoubtedly ancillary. Because bankruptcy is governed by statute, the question presented is one of statutory interpretation. <u>See</u> <u>Shell</u>, 499 B.R. at 614. That is, when Congress directed particular

9

debtors to exempt property according to the law of their prior domicile, how did it intend for that state's law to apply?

When interpreting a statute, a court's analysis begins with the text of the statute itself. Othi v. Holder, 734 F.3d 259, 265 (4th Cir. 2013). If the language is "clear and unambiguous," then the Court is "duty bound to give effect to that language." Metro Mach. Corp. v. Dir., Office of Worker's Comp. Programs, 846 F.3d 680, 689 (4th Cir. 2017). The focus should be on a statute's plain meaning, with an eye toward "the language itself, but also the specific context in which that language is used, and the broader context of the statute as a whole." Country Vintner of N.C., LLC v. E. & J. Gallo Winery, Inc., 718 F.3d 249, 258 (4th Cir. 2013) (quoting In re Total Realty Mgmt., LLC, 706 F.3d 245, 251 (4th Cir. 2013)). "[W]here statutory language is ambiguous, we 'turn to other evidence to interpret the meaning of the provision,' interpreting provisions harmoniously, where possible, or by reference to legislative history, and always with the goal of ascertaining congressional intent." Johnson v. Zimmer, 686 F.3d 224, 235 (4th Cir. 2012) (quoting New Cingular Wireless PCS, LLC v. Finley, 674 F.3d 225 (4th Cir. 2012)). "Statutory interpretations that render superfluous other provisions in the same enactment are strongly

**MEMORANDUM OPINION AND ORDER**
**AFFIRMING ORDER OF THE BANKRUPTCY COURT**

disfavored." <u>Nat'l Endowment for the Arts v. Finley</u>, 524 U.S. 569, 609 (1998).

Here, although the Debtors reside in West Virginia, § 522(b)(3)(A) directs them to exempt "any property that is exempt under" Louisiana law. Despite the clarity of the statute's language, the simple command that the Debtors exempt property that "is exempt" under Louisiana law leaves critical questions unanswered. As the district court queried in <u>In re Fernandez</u>:

> Should the Court strictly construe the phrase "is exempt" and look to what [Louisiana] courts would allow debtors to exempt in non-bankruptcy actions? Should the Court look to [Louisiana] law to see if [Louisiana] would permit out-of-state property to be exempt in bankruptcy? Or should the Court treat the subsection as a choice of law provision, and simply apply the categories and amounts of [Louisiana] exemption to Debtor's bankruptcy estate, paying no attention to any potential limitations [Louisiana] law might impose on applying [Louisiana] law outside [Louisiana]? The statute's terse command to determine what "is exempt under . . . State" law provides no clear answer.

<u>In re Fernandez</u>, No. EP-11-CV-123-KC, 2011 WL 3423373, at *6 (W.D. Tex. Aug. 5, 2011).

Judicial responses to these questions have produced no fewer than three interpretations.[4] The alternatives hold that state

---

[4] Notably, while the extraterritorial application of state exemption law was an issue prior to BAPCPA, the extended look-back window of BAPCPA appears to have made it a more frequently raised one. <u>See</u> <u>In re Fernandez</u>, 2011 WL 3423373, at *4.

MEMORANDUM OPINION AND ORDER
AFFIRMING ORDER OF THE BANKRUPTCY COURT

exemptions either never, sometimes, or always may be applied to persons or property outside state borders. These alternatives have been denominated respectively as the anti-extraterritoriality, state-specific, and preemption interpretations. <u>Id.</u> Although the Trustee urges application of the anti-extraterritoriality interpretation, this Court agrees with the Bankruptcy Court's conclusion that the majority approach, which is the state-specific interpretation, best embodies congressional intent and the liberal construction afforded to bankruptcy exemptions.

## A.     Anti-Extraterritoriality Interpretation

Under the anti-extraterritoriality interpretation espoused by the Trustee, "bankruptcy courts may not give extraterritorial effect to any state's exemption laws." <u>In re Fernandez</u>, 2011 WL 3423373, at *7. "In other words, when applying a former domicile state's exemption laws, the bankruptcy court should apply them as if it were a state court of the forum state where the bankruptcy court were located, giving them like effect." <u>Id.</u>

### 1.     <u>In re Fernandez</u>

The Bankruptcy Court for the Western District of Texas is the only court to have applied the anti-extraterritoriality interpretation. <u>See</u> <u>id.</u> Its reasoning, resting on grounds similar

12

to those argued by the Trustee, was overturned on appeal to the district court.

In <u>In re Fernandez</u>, the debtor, a resident of Texas, attempted to use the applicable homestead exemption of his prior domicile, Nevada, to exempt his home in Texas. 445 B.R. 790, 793-94 (Bankr. W.D. Tex. 2011), <u>rev'd</u>, No. EP-11-CV-123-KC, 2011 WL 3423373 (W.D. Tex. 2011). The bankruptcy court reasoned that exemption laws "do not have extraterritorial effect for the obvious reason that one state cannot impose its remedial scheme on another state," nor is any state required to give full faith and credit to the exemption laws of another state. <u>Id.</u> at 798. Although "Congress chose to incorporate state law exemption schemes," the bankruptcy court reasoned that it had "expressed no intention, either express or implied, that those schemes would in the process become 'federalized.'" <u>Id.</u> at 802. Therefore, it concluded that the statute plainly directed the court not to apply the Nevada exemption to property in Texas. <u>Id.</u> at 816.

On appeal, the district court disagreed sharply with this conclusion, finding a "crucial difference between a state being <u>required</u> to give effect to another state's exemption laws and a state being <u>allowed</u> to give effect to another state's exemption laws." According to the district court, "[t]hat a state is

prevented from imposing its laws on another state does not mean
that a state may not offer its laws for use by another state, if
that other state so wishes, or that a state may not, in actions
brought in its own courts, apply its own state law to property
located elsewhere." <u>In re Fernandez</u>, 2011 WL 3423373, at *8. When
federal law directs a court to apply the law of a particular state,
there is no concern that the state is impermissibly imposing its
laws on another jurisdiction. <u>See</u> <u>id.</u> On the contrary, contractual
and state choice of law principles regularly and permissibly
require courts to give effect to another state's laws, with the
"modest" limitations of the Due Process and Full Faith and Credit
Clauses. <u>Id.</u>

The district court further reasoned that the anti-
extraterritoriality interpretation renders too much of the statute
irrelevant. More particularly, selecting the appropriate law under
§ 522(b)(3)(A) would be a fruitless exercise for most relocated
debtors to whom the section applies. Such debtors likely have no
property in their prior domicile, would be categorically ineligible
for its exemptions, and would take advantage of the hanging
paragraph. Had Congress intended this result, it simply could have
directed application of the federal exemptions. <u>Id.</u> at *9-*10.

14

MEMORANDUM OPINION AND ORDER
AFFIRMING ORDER OF THE BANKRUPTCY COURT

Moreover, the anti-extraterritoriality approach would render the

hanging paragraph superfluous:

> [Section] 522(b)(2) requires application of state opt-out
> law to determine if a debtor may use the federal
> exemptions. Specifically, the statute states that the
> federal exemptions are available "unless the State law
> applicable to the debtor under paragraph (3)(A)
> specifically does not so authorize." [If a state's
> exemption law cannot apply outside its boundaries], there
> is no state law that would ever be "applicable" to a
> debtor under paragraph (3)(A), so there is no state law
> to use to make this determination. With no state opt-out
> law to apply and with state exemptions always unavailable
> . . ., the debtor is left with a Hobson's choice between
> the federal exemptions and no exemptions at all.

Id. at *10; see also Finley, 524 U.S. at 609. Based on this

reasoning, the district court rejected the anti-extraterritoriality

interpretation and adopted the state-specific approach.

### 2.  The Trustee's Arguments

The Trustee supplements his argument in favor of the anti-

extraterritoriality approach with reference to the "presumption

against extraterritoriality" and constitutional limits on the

states' sovereign power. Neither of these arguments is convincing,

however; each fails to address the concerns articulated so

effectively by the district court in In re Fernandez.

The "presumption against extraterritoriality" is a canon of

statutory construction that limits the application of federal law

on an international level. In Kiobel v. Royal Dutch Petroleum Co.,

15

for example, the Supreme Court considered "whether and under what circumstances courts may recognize a cause of action under the Alien Tort Statute, for violations of the law of nations occurring within the territory of a sovereign other than the United States." 133 S.Ct. 1659, 1662 (2013). The Alien Tort Statute ("ATS") provides that "[t]he district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." Id. at 1663 (quoting 28 U.S.C. § 1350). The plaintiffs, former residents of Nigeria, brought suit under the ATS, alleging that the respondent companies had violated the law of nations by aiding and abetting the Nigerian government's atrocities. Id. at 1662-63.

The Supreme Court applied the presumption against extraterritorial application, which "provides that when a statute gives no clear indication of an extraterritorial application, it has none, and reflects the presumption that United States law governs domestically but does not rule the world." Id. at 1664 (quoting Morrison v. Nat'l Austl. Bank Ltd., 561 U.S. 247 (2010); Microsoft Corp. v. AT&T Corp., 550 U.S. 437 (2007)) (internal quotation and citation omitted). The presumption prevents "unintended clashes" between domestic and foreign laws "which could

**MEMORANDUM OPINION AND ORDER**
**AFFIRMING ORDER OF THE BANKRUPTCY COURT**

result in international discord." Id. (quoting EEOC v. Arabian Am. Oil Co., 499 U.S. 244, 248 (1991)). The Supreme Court concluded that, absent contrary congressional intent, the presumption prevented application of the ATS to "conduct within the territory of another sovereign." Id. at 1665, 1669.

In this case, the Bankruptcy Court recognized that, although states are analogous to international sovereigns, the presumption against extraterritorial application remains a canon of construction confined to the international context (Dkt. Nos. 8-9 at 5-7; 23 at 18-19). There, the presumption rests on concern that the judiciary will unwittingly affect foreign policy or spark international discord. Kiobel, 133 S.Ct. at 1664. There is no such concern when Congress directs that the law of a particular state be applied in bankruptcy, a wholly domestic affair, and there thus is no need to apply the presumption in this case.

Connecting Kiobel to the instant case, however, the Trustee argues that a similar presumption should apply between states because they too are sovereigns that may legislate only within their boundaries (Dkt. No. 19 at 24). Citing the familiar principles of federalism, due process, and full faith and credit,

## MEMORANDUM OPINION AND ORDER
## AFFIRMING ORDER OF THE BANKRUPTCY COURT

the Trustee asserts that states simply have no power to enact exemption laws with extraterritorial effect. Id. at 24-29.[5]

Undoubtedly, "[t]he principle that state laws may not generally operate extraterritorially is one of constitutional magnitude." Carolina Trucks & Equip., Inc. v. Volvo Trucks of N.A., Inc., 492 F.3d 484, 489 (4th Cir. 2007) (citing Healy v. Beer Inst., 491 U.S. 324, 335 (1989) (commerce clause); Baldwin v. G.A.F. Seelig, Inc., 294 U.S. 511, 521 (1935)). Nonetheless, the

---

[5] See, e.g., Nevada v. Hall, 440 U.S. 410 (1979) (holding that the Constitution did not require a California court to apply a Nevada statute limiting damages recoverable against the state of Nevada); National League of Cities v. Usery, 426 U.S. 833 (1976) (commerce clause); Pac. Emp'rs Ins. Co. v. Indus. Accident Comm'n, 3006 U.S. 493, 502 (1939) ("[T]he full faith and credit clause does not require one state to substitute for its own statute, applicable to persons and events within it, the conflicting statute of another state . . . ."); Farnum v. Blackstone Canal Corp., 8 F. Cas. 1059, 1065 (C.C.D.R.I. 1830) ("Every legislature, however broad may be its enactments, is supposed to confine them to cases or persons within the reach of its sovereignty. . . . It cannot be presumed, that the Massachusetts legislature meant to exceed its legitimate authority."); Grover Irrigation & Land Co. v. Lovella Ditch, Reservoir & Irrigation Co., 131 P. 43 (Wy. 1913) ("It is a familiar elementary principle that the laws of a state have no extraterritorial effect. And it is not necessary for a state statute to contain words expressly confining its operation within the state. That it is so confined is generally understood."); State v. Hall, 19 S.E. 602, 602 (N.C. 1894) ("It is a general principle of universal acceptation that one state or sovereignty cannot enforce the penal or criminal laws of another, or punish crimes or offenses committed in and against another state or sovereignty."); Wooster v. Great Falls Manf. Co., 39 Me. 246, 250 (Me. 1855).

restraints on state sovereignty cited by the Trustee do not cure the shortcomings of the anti-extraterritoriality interpretation.

First, the Constitution is not offended when Congress directs a federal court to apply state law.[6] Rather, states "have the power to enact laws relating to exemptions in any fashion [they] deem appropriate," Hovis, 751 F.2d at 716, and Congress is at equal liberty to adopt those state laws for national application. See United States v. Sharpnack, 355 U.S. 286, 293-95 (1958) (reasoning that Congress may assimilate state law and providing the Bankruptcy Code's use of state exemptions as an example); see also Yee v. Jewell, No. 16-490, 2017 WL 78473 (D.D.C. Jan. 9, 2017) ("[E]ven where federal law borrows from state rules or procedures, it remains federal law."). This is true even when the state law has

_____

[6] The Trustee cites a number of cases for the proposition that, outside the context of bankruptcy, exemptions are limited to the territory of the forum state (Dkt. No. 19 at 29-30). See, e.g., Chicago, R.I. & P. Ry. Co. v. Sturm, 174 U.S. 710, 717 (1899) ("Exemption laws . . . are part of the remedy, and subject to the law of the forum."); Sherwin-Williams Co. v. Morris, 156 S.W.2d 272 (Tenn. Ct. App. 1941) ("Exemption laws are considered as statutes affecting the remedy only, and have no extraterritorial force. Questions of exemption, therefore, are to be determined solely by the laws of the forum."). According to the Trustee, this authority supports "the notion that limiting exemptions to one state is not peculiar at all" (Dkt. No. 19 at 30). While the Court does not question the Trustee's premise, these cases simply do not address whether and to what extent Congress intended state law to apply pursuant to § 522(b).

yet to be enacted, such as § 522(b)(3)(A)'s direction to apply state law applicable "on the date of the filing." See <u>Sharpnack</u>, 355 U.S. at 296. Therefore, the fact that a state lacks power to impose its laws on persons and property situated outside its boundaries does not mean that a state's laws may never be applied extraterritorially if Congress sees fit to do so.

Second, as discussed above, the Trustee's reasoning would render the 730-day look-back window almost pointless, <u>In re Fernandez</u>, 2011 WL 3423373, at *9-*10, and would result in many relocated debtors applying the federal exemptions. Congress could have applied those exemptions, but notably chose to direct certain debtors to the law of their prior domicile.

The anti-extraterritoriality approach thus rests on the flawed premise that state power, rather than congressional intent, determines the scope of bankruptcy exemptions. Moreover, such an interpretation often would render the look-back window a fruitless endeavor. Therefore, in this Court's view, the anti-extraterritoriality approach advanced by the Trustee is not consistent with the intent of Congress as to how § 522(b) is to operate, and the Court declines to adopt this view.

MEMORANDUM OPINION AND ORDER
AFFIRMING ORDER OF THE BANKRUPTCY COURT

## B.    State-Specific Interpretation

The second approach, which is embraced by the majority of courts and was applied by the Bankruptcy Court in this case, is the state-specific interpretation, under which "a state's exemption laws may be used by out-of-state debtors for out-of-state property to the extent that each state's exemption law permits." In re Fernandez, 2011 WL 3423373, at *11 & n.3 (collecting cases).[7] In other words, "if the state's exemption statutes or decisional authority interpreting them do not explicitly limit the use of the exemptions to in-state residents or to in-state property, then the bankruptcy court should apply the state's exemption laws to the debtor's property, wherever located." In re Footen, No. 11-38619, 2012 WL 669849 (Bankr. D. Or. Feb. 29, 2012) (quoting In re Fernandez, 2011 WL 3423373, at *11).

The state-specific approach acknowledges that the straightforward direction of § 522(b)(3)(A) is a choice-of-law provision. See, e.g., In re Drenttel, 403 F.3d 611 (8th Cir. 2005);

_____

[7] The district court in In re Fernandez compiled a list of 40 cases considering the extraterritorial application of state exemptions and found that, although their rationale is varied, 36 courts looked to state law when making their determination. 2011 WL 3423373, at *11 & n.3. These cases include "three of the four cases decided by Circuit Courts of Appeals or Bankruptcy Panels of Circuit Courts of Appeals." Id. at *11.

MEMORANDUM OPINION AND ORDER
AFFIRMING ORDER OF THE BANKRUPTCY COURT

In re Arrol, 170 F.3d 934, 936 (9th Cir. 1999) (citing In re Calhoun, 47 B.R. 119, 122 (Bankr. E.D. Va. 1985)); In re Stephens, 402 B.R. at 5; In re Jevne, 387 B.R. 301 (Bankr. S.D. Fla. 2008). Therefore, because § 522(b)(3)(A) simply directs the Court to apply "State or local law that is applicable," it is reasonable to ask whether that jurisdiction intends to apply its exemptions to out-of-state property, not whether it has the power to do so.

The Court is constrained to agree that this is the plainest meaning of the statute, as well as the most liberal interpretation that feasibly may be applied to § 522(b)(3)(A).[8] In re Nguyen, 211 F.3d at 110. As the bankruptcy appellate panel reasoned in In re Stephens:

> If the plain language of the pertinent . . . statute restricts its application to property located within the state, the statute cannot be given extraterritorial effect by the bankruptcy court . . . . If the plain language of a state's . . . statute is silent as to its extraterritorial effect, the Court must then look to that state's case law to see if the appellate courts of that state have interpreted their . . . statute to apply to property located outside of the state.
>
> If no state case law exists on whether the exemption has extraterritorial application, the bankruptcy court must then interpret the state's . . . law according to its general principles governing exemptions . . . .

---

[8] As discussed in detail below, the more liberal construction of the preemption interpretation is foreclosed.

**MEMORANDUM OPINION AND ORDER**
**AFFIRMING ORDER OF THE BANKRUPTCY COURT**

In re Stephens, 402 B.R. at *6. In many cases that reach the final inquiry, the liberal construction afforded to exemptions will counsel that they be applied extraterritorially. See In re Fernandez, 2011 WL 3423373, at *12. But see In re George, 440 B.R. at 166 (reasoning that the applicability of state exemptions is impliedly limited by a state's power to affect residents within its jurisdiction); In re Sanders, 72 B.R. 124 (Bankr. M.D. Fla. 1987) (reasoning that Florida's constitutional homestead exemption is impliedly limited to property within the state).

Here, the majority approach dictates the extraterritorial application of Louisiana's exemption laws to the Debtor's property located in West Virginia at the time of filing. The plain language of the Louisiana exemption statutes at issue does not restrict their application to property within the state. See La. Stat. Ann. §§ 13:3881, 23:1205. Nor has the Trustee provided any Louisiana case law interpreting these exemptions to apply exclusively in-state. On the contrary, it is apparent that Louisiana, much like many other states, liberally construes its exemptions. See, e.g., Thompson-Ritchie & Co. v. Graves, 120 So. 1024, 1028 (La. 1929); Cloud v. Cloud, 127 So.2d 560 (La. Ct. App. 1961); Mounger v. Ferrell, 11 So.2d 56, 60 (La. Ct. App. 1942).

The Trustee argues for a presumption that state exemption law should be given extraterritorial effect not when state law is silent, but only if the state makes "an affirmative approval [or an] effort to insist on extraterritorial effect" (Dkt. Nos. 19-1 at 8; 24 at 14). The Trustee's concerns are sufficiently addressed by existing state law, however, as many states employ a prudential presumption that their laws will not apply extraterritorially. See, e.g., Nevares v. M.L.S., 345 P.3d 719, 727 (Utah 2015); Sullivan v. Oracle Corp., 254 P.3d 237, 248 (Cal. 2011); Carolina Trucks, 492 F.3d at 489; Union Underwear Co., Inc. v. Barnhart, 50 S.W.3d 188, 190 (Ky. 2001). Such case law will be informative when applying the state-specific interpretation articulated above. See, e.g., In re Ginther, 282 B.R. 16, at *19 (Bankr. D. Kan. 2002) (refusing to apply the Kansas homestead exemption to out-of-state property based on Kansas case law precluding extraterritoriality).

**C. Preemption Interpretation**

The final approach to § 522(b) is the preemption interpretation. Under this interpretation, "a state's exemption laws may be applied to non-residents and to out-of-state property, regardless of whether that state's laws allow for such extraterritorial effect or not." In re Fernandez, 2011 WL 3423373, at *6.

As its name implies, the preemption interpretation rests on the presumption that § 522(b) is a preemptive choice-of-law provision that does not rely on a state's intent regarding extraterritorial effect. See id. at *17. Neither the parties nor the Bankruptcy Court urges adoption of this minority interpretation. See, e.g., In re Shell, 478 B.R. 889, 897-98 (Bankr. N.D. Ind. 2012), rev'd, 499 B.R. 610 (N.D. Ind. 2013); In re Garrett, 435 B.R. 434 (Bankr. S.D. Tex. 2010); In re Camp, 396 B.R. 194 (Bankr. S.D. Tex. 2010), rev'd on other grounds, 631 F.3d 757 (5th Cir. 2011). Although the approach would be the simplest to apply, it appears unlikely Congress intended such an application.

"The Supremacy Clause of the Constitution makes federal law 'the supreme Law of the Land.'" College Loan Corp. v. SLM Corp., 396 F.3d 588, 595 (4th Cir. 2005) (quoting U.S. Const. art. VI, cl. 2). "Federal law may preempt state law in three ways, denominated as express preemption, field preemption, and conflict preemption." H&R Block E. Enters., Inc. v. Raskin, 591 F.3d 718, 723 (4th Cir. 2010).

Express preemption occurs "when Congress has clearly expressed an intention to do so." College Loan Corp., 396 F.3d at 596. "Field preemption may occur when the federal scheme of regulation of a defined field is so pervasive that Congress must have intended to

leave no room for the states to supplement it." <u>City of Charleston
v. A Fisherman's Best, Inc.</u>, 310 F.3d 155, 169 (4th Cir. 2002).
Finally, conflict preemption occurs when a state law actually
conflicts with a federal law by standing "as an obstacle to the
accomplishment and execution of the full purposes and objectives of
Congress." <u>Raskinu</u>, 591 F.3d at 723 (quoting <u>Chi. & N.W. Transp.
Co. v. Kalo Brick & Tile Co.</u>, 450 U.S. 311, 317 (1981)). With
regard to bankruptcy exemptions, the Fourth Circuit has reasoned
that preemption cannot exist because "Congress 'expressly and
concurrently authorizes' state legislation on the subject. In such
instance, rather than preempting the area, Congress expressly
authorizes the states to 'preempt' the <u>federal</u> legislation."
<u>Sheehan</u>, 574 F.3d at 252.

Here, express preemption is not a possibility, as the statute
does not suggest that Congress intended to disregard all state-
imposed limitations on extraterritoriality. To the contrary, by
allowing states to opt out of the federal exemptions, it appears
Congress "intended to authorize the states in some cases to preempt
federal exemption law that would otherwise apply." <u>In re Townsend</u>,
No. 10-14167, 2012 WL 112995 (D. Kan. Jan. 12, 2012) (relying on <u>In
re Stephens</u>, 402 B.R. at 5); <u>see also</u> <u>In re Rody</u>, 468 B.R. 384, 391
& n.3 (D. Ariz. 2012). Had Congress intended to preempt state

exemption limitations, it likely would have directed debtors to exempt property that "would be" exempt under the law of their former domicile, not property that "is" exempt. Use of the latter construction imports the state exemptions along with their limitations. In re Fernandez, 2011 WL 3423373, at *22.

Field preemption meets a similar fate, as Congress clearly left room for states to implement their own bankruptcy exemptions, rather than restrict all debtors to the use of federal exemptions. See id. at *19. Likewise, conflict preemption is precluded by inclusion of the hanging paragraph, which provides that federal exemptions may be used in those circumstances where Congress has deemed state law too restrictive. See id. at *20. The hanging paragraph would be superfluous had Congress intended to preempt state limitations on extraterritoriality. In re Long, 470 B.R. 186, 190 (D. Kan. 2012) ("If preemption were intended, nearly everyone who resided in any state or territory for more than 90 days before the commencement of the 730-day period would be able to claim the exemptions of that state. No one other than people who had been domiciled in foreign countries would need the federal fail-safe."); see also In re Fernandez, 2011 WL 3423373, at *20-*21.

That Congress did not intend for § 522(b) to preempt state limitations on extraterritorial application of exemption law is

**MEMORANDUM OPINION AND ORDER**
**AFFIRMING ORDER OF THE BANKRUPTCY COURT**

clear, and the Court therefore declines to adopt the minority preemption interpretation.

### V. CONCLUSION

For the reasons discussed, the Court **AFFIRMS** the Bankruptcy Court's Order overruling the Trustee's objection to the applicability of Louisiana exemptions for the Debtors' property not located in Louisiana. In doing so, it adopts the majority, state-specific interpretation of extraterritoriality under § 522(b).

It is so **ORDERED.**

The Court **DIRECTS** the Clerk to transmit copies of this Order to counsel of record, to enter a separate judgment order, and to remove this case from the Court's active docket.

DATED: June 27, 2017.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE